USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-1588 CLAYTON LIBBY, Petitioner, Appellant, v. RONALD DUVAL AND SCOTT HARSHBARGER, Respondents, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Patricia A. O'Neill for appellant. ___________________ Elisabeth J. Medvedow, Assistant Attorney General, with whom _____________________ Scott Harshbarger, Attorney General, was on brief for appellees. _________________ ____________________ March 24, 1994 ____________________ BOWNES, Senior Circuit Judge. In this appeal, BOWNES, Senior Circuit Judge. _____________________ Clayton Libby, a Massachusetts state prisoner serving a life sentence on a 1971 conviction for murder in the first degree, challenges the district court's denial of his petition for a writ of habeas corpus. In so doing, petitioner primarily contends that the court erred in deeming harmless a jury instruction on the issue of malice which set up an unconstitutional mandatory presumption. See Sandstrom v. ___ _________ Montana, 442 U.S. 510, 520-24 (1979) (instruction containing _______ presumption which has the effect of relieving the prosecution of the burden of proof on an element of a charged crime violates the Due Process Clause) (hereinafter "Sandstrom _________ error").1 We affirm. I. I. __ BACKGROUND BACKGROUND __________ Early in the morning of August 9, 1970, Bruce Cullen, a New Hampshire resident, was stabbed to death in a brawl that erupted outside of a South Boston housing project. Petitioner and George Cooper were indicted and tried for the ____________________ 1. Petitioner also argues that an instruction on manslaughter given at this trial effectuated an unconstitutional shift in the burden of proof. As we will explain more fully infra in discussing the effects of the _____ presumption-creating instruction, we do not believe it at all likely that the jury would have returned a verdict of manslaughter even if it had been perfectly instructed. We, therefore, regard any error in the manslaughter instruction as harmless and confine our discussion to petitioner's claim under Sandstrom. _________ -2- 2 killing. Cooper was acquitted; Libby, however, was convicted of murder in the first degree. Although the circumstances in which the stabbing took place are sketchy, the trial record reveals that, on the night of August 8, 1970, petitioner was drinking beer, smoking marijuana, and possibly taking diet pills. Sometime early in the morning of August 9, 1970, petitioner, along with Francis Barton and Kevin Martin, went to George Cooper's South Boston apartment building and began to converse with Cooper through a rear apartment window. After a while, petitioner and Martin walked to the front of the building where they met several other men. Included among these men were the victim, Cullen, and another New Hampshire resident, Dennis Bates. At some point, a fight broke out. The reason for the fight is not entirely clear, although there was testimony indicating that it started simply because Cullen and Bates were not from the area. There also was testimony indicating that petitioner and Cullen were arguing about whether Cullen had been in a certain federal prison. In any event, during the course of the fight, Cullen was stabbed nine times. Six of the stab wounds were to his chest; the other three were to his back or side. One of the chest wounds was to the victim's heart, and apparently was delivered by a "downward" blow. -3- 3 No witness testified to actually observing the stabbing.2 Instead, petitioner was inculpated through the testimony of eyewitnesses who observed him both before and after the fight. Specifically, there was testimony that, inter alia, petitioner (1) had been carrying a knife prior to _____ ____ the fight; (2) was seen running away from the site of the fight with blood on his clothes; (3) was seen holding a knife shortly after the stabbing; (4) admitted, on several occasions after the fight, that he had done the stabbing; and (5) made threats against anyone who might "snitch[] on him." There also was testimony that petitioner had stabbed Cullen because he thought Cullen was "going to jump him from behind" and/or because he thought Cullen was "beating up Kevin Martin." At the conclusion of a seven-day jury trial, the trial judge instructed the jury on theories of first degree murder,3 second degree murder, and manslaughter. In the ____________________ 2. One witness, Mary VanGordon, who lived in a neighboring apartment, did testify to seeing Cooper hold the victim while a short, stocky man with dark hair (a description that did not fit petitioner) thrust an object towards Cullen's stomach five times. VanGordon further testified that, after the attack, Cooper ran into the hallway of a nearby building while the man who had thrust the object towards Cullen's stomach ran around to the back of the same building. 3. The trial court instructed the jury that it could convict for first degree murder if it determined, after other requisite findings, that the stabbing had been either deliberately premeditated or had been committed with extreme atrocity or cruelty. A review of the trial record, however, reveals that the prosecution relied exclusively on the -4- 4 course of defining malice, which is "the requisite mental element" of murder under Massachusetts law, see Commonwealth ___ ____________ v. Huot, 403 N.E.2d 411, 414 (Mass. 1980), overruled on other ____ _________ __ _____ grounds, Commonwealth v. Bray, 553 N.E.2d 538 (Mass. 1990),4 _______ ____________ ____ the judge told the jury that "[m]alice is implied in every deliberate cruel act by one against another." The jury convicted petitioner of first degree murder and recommended a sentence of life imprisonment. On appeal, petitioner argued, inter alia, that the _____ ____ aforementioned instruction constituted Sandstrom error and _________ required reversal of his conviction.5 More particularly, ____________________ extreme atrocity or cruelty theory in arguing that first degree murder had been committed. 4. Unlawful killings committed without malice are considered manslaughter. See Commonwealth v. Todd, 563 N.E.2d 211, 214 ___ ____________ ____ (Mass. 1990). 5. Sandstrom was not decided until eight years after _________ petitioner's conviction. However, because petitioner's direct appeal was not perfected until nearly eighteen years after his conviction, see Commonwealth v. Libby, 580 N.E.2d ___ ____________ _____ 1025, 1026-27 (Mass. 1991) (hereinafter "Libby II") _________ (explaining the neglect by court-appointed counsel, the clerk's office, and the prosecutor's office which led to the delay in perfecting petitioner's appeal), and because new rules announced in Supreme Court decisions apply to all criminal cases "pending on direct review or not yet final," Griffith v. Kentucky, 479 U.S. 314, 328 (1987), both the ________ ________ Massachusetts Supreme Judicial Court ("SJC"), at least in Libby II, and the district court treated petitioner's _________ Sandstrom argument as properly raised on direct appellate _________ review. We will do likewise. Similarly, although petitioner did not object to the challenged instruction at the time it was given, Massachusetts has waived its contemporaneous objection rule in the Sandstrom error context where the error occurred prior _________ to the Sandstrom decision. See, e.g., Commonwealth v. Hill, _________ ___ ____ ____________ ____ -5- 5 petitioner asserted that the instruction had the effect of directing the jury to find malice if it found that petitioner had committed a "deliberate cruel" act against the victim despite the fact that a "deliberate cruel" act is not necessarily malicious. The SJC disagreed, holding: "In the context of the facts of this case and in light of the judge's entire instruction on malice (which is not otherwise challenged), we see neither a substantial likelihood of a miscarriage of justice calling for relief . . . nor an unconstitutional presumption dictated to the jury." Commonwealth v. Libby, 540 N.E.2d 154, 158 (Mass. 1989) ____________ _____ (hereinafter "Libby I"). The SJC then went on to affirm the _______ conviction, although it remanded to the superior court for consideration of a previously-filed motion to dismiss the indictment on account of delay. In August 1990, petitioner's motion to dismiss was denied by the superior court. In September 1990, petitioner ____________________ 442 N.E.2d 24, 28 n.9 (Mass. 1982), vacated and remanded on _______ ___ ________ __ other grounds, Hill v. Maloney, 927 F.2d 646 (1st Cir. 1990). _____ _______ ____ _______ Because this condition is met, petitioner's failure to object at trial does not procedurally bar us, see Wainwright v. ___ __________ Sykes, 433 U.S. 72, 84 (1977) (failure to object at trial as _____ required by a state contemporaneous objection rule constitutes "independent and adequate ground" sufficient to foreclose federal habeas review of alleged error), from reaching the merits of his argument in this instance, cf. ___ Puleio v. Vose, 830 F.2d 1197, 1199 (1st Cir. 1987) ______ ____ (indicating that waiver of state contemporaneous objection rule removes procedural bar that ordinarily would preclude habeas court from reaching claim on merits where there was no objection at trial), cert. denied, 485 U.S. 990 (1988). _____ ______ -6- 6 filed a timely notice of appeal from this denial. While that appeal was pending, this court handed down its decision in Hill v. Maloney, 927 F.2d 646 (1st Cir. 1990). See supra ____ _______ ___ _____ note 5. In Hill, we held unconstitutional a jury instruction ____ quite similar to the one here at issue. Id. at 649-51.6 ___ Relying on Hill, petitioner argued for a second time to the ____ SJC that his conviction should be set aside because the trial judge's instruction had the effect of setting up an unconstitutional mandatory presumption. Once again, the SJC rejected petitioner's argument and affirmed his conviction. See Libby II, 580 N.E.2d at 1028. ___ ________ Finally, petitioner sought relief in the district court by means of a writ of habeas corpus. In a comprehensive memorandum and order, the court applied the three-part test set forth in Hill for review of alleged ____ Sandstrom errors and denied the writ. First, the court _________ determined that the challenged instruction set up an unconstitutional mandatory presumption and therefore constituted Sandstrom error. See Libby v. Duval, No. 86- _________ ___ _____ _____ 2187-WD, slip op. at 8-9 (D. Mass. April 20, 1993) (hereinafter "Libby III"); see also Hill, 927 F.2d at 648-49. _________ ___ ____ ____ Next, the court found that the instructions as a whole did not sufficiently explain the erroneous instruction on malice, ____________________ 6. In Hill, the jury was instructed that "malice is implied ____ from any deliberate or cruel act against another, however __ sudden." Id. at 648 (emphasis added). ___ -7- 7 and the jury therefore was not properly instructed on the law. See Libby III, slip op. at 10-13; see also Hill, 927 ___ _________ ___ ____ ____ F.2d at 649. Finally, the court concluded that the instruction, although erroneous, was harmless beyond a reasonable doubt. See Libby III, slip op. at 13-19; see also ___ _________ ___ ____ Hill, 927 F.2d at 649. It is from this last conclusion that ____ petitioner appeals. II. II. ___ DISCUSSION DISCUSSION __________ We agree with the district court that the tripartite Hill test applies to the merits of petitioner's ____ claim. Accordingly, we organize our discussion within the Hill framework. ____ A. A. Because the Hill opinion rehearses in great detail ____ the legal standards applicable to challenges to jury instructions which set up presumptions, and because respondents7 concede that the instruction challenged here established a mandatory presumption, we do not believe that either a highly detailed discussion of the law of presumptions or an extensive explanation of why the ____________________ 7. Respondents in this matter are Ronald Duval, the Superintendent of the Massachusetts Correctional Institution at Cedar Junction, where respondent is being detained, and Scott Harshbarger, the Attorney General of the Commonwealth of Massachusetts. -8- 8 instruction was defective is required.8 Instead, we think it sufficient to note our belief that it was reasonably likely that the jurors construed the trial judge's instruction as requiring a finding of malice upon a finding that the stabbing was "deliberate" and "cruel." See Estelle ___ _______ v. McGuire, 112 S. Ct. 475, 482 (1991) (habeas challenges to _______ jury instructions reviewed for "reasonable likelihood" that the jury has applied the challenged instruction in an unconstitutional manner). Thus, because the instruction had the effect of relieving the prosecution of the burden of proof on an element of the crime charged, see Sandstrom, 442 ___ _________ U.S. at 520-24, the district court's conclusion that the instruction established a mandatory presumption was clearly correct. Accordingly, we move to step two of the Hill test. ____ B. B. Once we have determined that the specific language challenged by a petitioner set up a mandatory presumption, we consider whether other parts of the instruction explained the particular infirm language to the extent that there is no reasonable likelihood that the jurors applied the unconstitutional presumption. See Boyde v. California, 494 ___ _____ __________ U.S. 370, 380 (1990). General instructions regarding the presumption of innocence and the government's burden of ____________________ 8. Readers interested in such a discussion should review both the Hill decision and the Supreme Court's decision in ____ Yates v. Evatt, 111 S. Ct. 1884 (1991). _____ _____ -9- 9 proving all elements of a crime beyond a reasonable doubt are insufficient to fulfill this explanatory role. Id. at 651.9 ___ So too are instructions directly contrary to the erroneous one which themselves correctly state the law. Id.10 ___ Instead, there must be other language in the instructions which actually "explains the infirm language sufficiently so ________ that there is no reasonable likelihood that the jury believed it must [in the context of an erroneous malice instruction] find malice if it found petitioner [acted in such a way so as to trigger the unconstitutional presumption]." Id. ___ Respondents contend that four sections of the instructions, when taken together, sufficiently explain the infirm language. After reviewing these four sections, and after further reviewing the instructions as a whole, we cannot agree. The first two sections adduced by respondents involve definitions of malice given prior to the ____________________ 9. This is because "`[t]he jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to [malice] could be satisfied.'" Id. (quoting Sandstrom, 442 ___ _________ U.S. at 518-19 n.7) (alteration in original). 10. This is because "`[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.'" Id. (quoting ___ Franklin, 471 U.S. at 322) (alteration in original). ________ -10- 10 unconstitutional instruction.11 In each of these two instances, the trial judge correctly instructed the jurors that malice was not proved where, among other things, there were "extenuating circumstances" sufficient to "reduce the crime to manslaughter." At most, we think that these two definitions of malice might have allowed the jurors to infer _____ that the presumption set up by the subsequent unconstitutional charge could be rebutted in certain extenuating circumstances. Cf. id. at 653. We do not, ___ ___ however, see how these definitions could have explained to _________ the jurors that the upcoming instruction was not going to mean what it actually and clearly stated. At any rate, we reiterate that correct instructions, which directly contradict the erroneous instruction, are not sufficient to cure the error. See supra at p.10 and note 10. ___ _____ The other two sections cited by respondents are less compelling. The first of these two, which again preceded the infirm instruction, primarily defined the terms ____________________ 11. The first passage relied upon by respondents reads as follows: "[M]urder is the killing of a human being without legal justification or without excuse or without such extenuating circumstances as may reduce the crime to manslaughter; but with what is called in the law, malice aforethought." The second passage is very similar: "Any intentional killing of a human being without legal justification or excuse and with no extenuating circumstances, sufficient in law to reduce the crime to manslaughter, is malicious." -11- 11 "aforethought" and "murder."12 The second defined the term "premeditated."13 Both of the passages are jumbled and confusing, especially when compared to the short and relatively straightforward statement which set up the unconstitutional mandatory presumption. Cf. Hill, 927 F.2d at 652 (juxtaposing ___ ____ clumsily-worded correct instruction with clear and concise unconstitutional instruction in deciding that correct portions of charge as a whole did not negate the effects of the presumption-creating language). Moreover, neither passage explicitly touched on the concept of malice, except ____________________ 12. In its entirety, this section reads: If the wicked intent to do injury to another person precedes the act by which the injury was done, it is malice aforethought. If the homicide is committed without legal justification or that is to say, without due authority of law and not in self defense, and there is no issue here of self defense, nor in the heat of passion on great provocation, but with the specific intent to take the one killed, or an unlawful act, the natural consequence of which would be to deprive another person of life, it is murder. 13. This passage states: Because it was a cruel act of the will and unlike an intent stimulated by a sudden anger or quarrel where someone suddenly, not having intended violence beforehand, does. It must have been a design actually formed and formed upon before the act and the murder must have been committed pursuant to design or plan that has thus been formed. -12- 12 insofar as the first one briefly discussed the "aforethought" component of the term "malice aforethought." In light of these deficiencies, we do not see how these passages could have actually explained the challenged instruction "so as to offset any erroneous impression given by [it]." See id. at ___ ___ 651. Before concluding our analysis of the entire charge, we pause to note that, because it was framed in irrefutable and unvarying terms ("[m]alice is implied in __ every deliberate and cruel act by one against another"), we _____ think it at least reasonably likely that the challenged instruction completely removed the element of malice from the case once the Commonwealth established that petitioner had acted deliberately and cruelly.14 Therefore, in conducting our harmless-error analysis, we will regard the instruction as having erected a conclusive mandatory presumption. See ___ Hill, 927 F.2d at 649 n.3 (distinguishing between conclusive ____ mandatory presumptions and rebuttable mandatory presumptions). ____________________ 14. We concede, as noted earlier, that the jurors might have _____ inferred from the correct definitions of malice that the "implication" of malice created by deliberate and cruel acts was rebuttable. See supra at p.11. Such a reading would, ___ _____ however, have been quite strained. In any case, we think it at least as likely that the jurors ignored the correct malice instructions which are facially irreconcilable with the challenged instruction. See supra note 10. ___ _____ -13- 13 In sum, we agree with the district court that the charge as a whole did not neutralize the effect of the presumption-creating language. Accordingly, the effect of the instruction here was unconstitutional. C. C. Having determined that the overall charge did not adequately explain the challenged instruction, we still must ascertain whether the error was harmless. See id. at 654; ___ ___ see also Sullivan v. Louisiana, 113 S. Ct. 2078, 2082 (1993) ___ ____ ________ _________ (reiterating that Sandstrom error is subject to harmless- _________ error review). In Hill, because the Supreme Court had sent ____ mixed signals regarding the proper harmless-error analysis to be employed where there has been a mandatory presumption, we applied two separate approaches. First, we looked at the trial record as a whole to determine whether it was clear "beyond a reasonable doubt" that the error was harmless. See ___ Hill, 927 F.2d at 655 (applying the Chapman v. California, ____ _______ __________ 386 U.S. 18, 24 (1967), standard for determining, on direct review, whether a conviction must be set aside because of federal constitutional error); see also Rose v. Clark, 478 ___ ____ ____ _____ U.S. 570, 580-82 (1986) (applying Chapman harmless-error _______ standard to a presumption-creating jury instruction challenged on habeas). Alternatively, we utilized a narrower approach, derived from Chapman, for analyzing the effects of _______ a conclusive mandatory presumption urged by Justice Scalia in -14- 14 a concurring opinion in Carella v. California, 491 U.S. 263, _______ __________ 267-73 (1989) (hereinafter the "Carella test"). See Hill, _______ ___ ____ 927 F.2d at 654-56. Under both approaches we determined that the error was not harmless. Id. at 657. ___ Since the decision in Hill, however, (and since the ____ district court passed on whether or not the presumption- creating instruction was harmless), the Supreme Court has issued Brecht v. Abrahamson, 113 S. Ct. 1710 (1993), which ______ __________ clarifies that the two approaches employed in Hill are no ____ longer applicable on collateral review. In Brecht, the ______ Supreme Court announced that the Chapman "harmless beyond a _______ reasonable doubt" test should not be utilized by courts reviewing claims of constitutional error of the trial type on habeas, id. at 1717; instead, reviewing courts should now ___ look to whether error "`had substantial and injurious effect or influence in determining the jury's verdict.'" Id. at ___ 1722 (quoting Kotteakos v. United States, 328 U.S. 750, 776 _________ ______________ (1946)). Petitioner contends that the Brecht approach is ______ inappropriate in the conclusive presumption context. He therefore urges us to explicitly adopt the Carella test for _______ determining whether or not an instruction creating such a presumption can be viewed as harmless error. In light of the clear and uncompromising language employed by the Court in Brecht, we decline to do so. ______ -15- 15 The issue presented in Brecht was whether the ______ prosecutor's use of petitioner's post-Miranda silence for _______ impeachment purposes at petitioner's trial, which violated petitioner's due process rights under Doyle v. Ohio, 426 U.S. _____ ____ 610 (1976) (hereinafter "Doyle" error"), was harmless. In _____ concluding that it was, the majority decided, as we have noted, that the Kotteakos harmless-error standard was the _________ appropriate lens through which to view the claim on habeas. See Brecht, 113 S. Ct. at 1722. In so doing, the Court ___ ______ departed from the approach taken in certain other habeas cases where it had assumed the applicability of the Chapman _______ standard. Id. at 1718 (citing Yates v. Evatt, 111 S. Ct. ___ _____ _____ 1884 (1991); Rose v. Clark, 478 U.S. 570 (1986); Milton v. ____ _____ ______ Wainwright, 407 U.S. 371 (1972); Anderson v. Nelson, 390 U.S. __________ ________ ______ (1968) (per curiam)). In conducting its analysis, the Court began by observing that Doyle error fit into the category of _____ constitutional error known as "trial error." See Brecht, 113 ___ ______ S. Ct. at 1717. These are errors which "`occur[] during the presentation of the case to the jury,' and [are] amenable to harmless error analysis because [they] `may be quantitatively assessed in the context of other evidence presented in order to determine the effect [they] had on the trial.'" Id. ___ (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)). _______ __________ -16- 16 Errors of the trial type have, since Chapman, been reviewed _______ under the "harmless-beyond-a-reasonable-doubt" standard. The Court also noted that, at the other end of the spectrum of constitutional errors are "`structural defects in the constitution of the trial mechanism, which defy analysis by `harmless-error' standards'. . . because they infect the entire trial process." Id. (quoting Fulminante, 499 U.S. at ___ __________ 309). Listed as an example of such a structural defect was deprivation of the right to counsel. Id. (citing Gideon v. ___ ______ Wainwright, 372 U.S. 335 (1963)). __________ After reaching this conclusion, and determining that neither the doctrine of stare decisis nor congressional _____ _______ silence prevented it from considering the merits of respondent's argument that the Kotteakos standard, and not _________ the Chapman standard, should be employed in determining _______ whether the Doyle error was harmless, see generally id. at _____ ___ _________ ___ 1718-19, the Court turned to an analysis of whether the Chapman standard appropriately served certain interests _______ implicated in habeas cases but not in the direct review context whence it sprang. Pointing to (1) the state's interest in finality of convictions that have survived direct review within the state court system; (2) the interests of comity; (3) the interests of federalism; and (4) the interest of maintaining the prominence of the trial itself, the Court decided that application of the Chapman standard to trial _______ -17- 17 errors challenged on habeas resulted in an "imbalance of . . . costs and benefits." Id. at 1721. Accordingly, the Court ___ embraced the less onerous Kotteakos standard, holding that it _________ applies "in determining whether habeas relief must be granted because of constitutional error of the trial type." Id. at ___ 1722. Like the Chapman test, this "actual prejudice" inquiry _______ presumes that the reviewing court will conduct its harmlessness assessment "in light of the record as a whole." Id. ___ After Brecht, we think it apparent that the ______ question of whether to apply the Kotteakos test in conducting _________ our harmless error inquiry turns on whether the conclusive presumption here at issue constitutes "trial error." Despite the force of some of our dissenting brother's arguments, we are constrained by the Supreme Court's teaching that it should be so considered. See Arizona v. Fulminante, 499 U.S. ___ _______ __________ 279, 306-07 (1990) (citing Carella). Thus, we train our _______ sights on whether, in light of the whole record, respondents have met their burden15 of demonstrating that the ____________________ 15. We acknowledge that the majority opinion in Brecht ______ treats the burden as petitioner's. See Brecht, 113 S. Ct. at ___ ______ 1722. Nonetheless, as Justice Stevens, who provided the crucial fifth vote in Brecht, convincingly explains in his ______ concurring opinion, the Kotteakos test requires that the _________ party arguing the harmlessness of an error which tends to prejudice a litigant's "substantial rights" (as all constitutional errors surely do) must bear the burden of proof. Id. at 1723-24 and n.1 (Stevens, J., concurring). ___ Given this authority, and given the further fact that there appear to be five votes for this position and only four votes -18- 18 conclusive presumption did not actually prejudice petitioner because it did not have a substantial and injurious effect or influence in determining the jury's verdict. In our view, respondents have met their burden. The thrust of petitioner's harmfulness claim is not that, in the absence of the conclusive presumption, he would have been acquitted. Rather, petitioner's argument is that the conclusive presumption precluded the jury from convicting him of manslaughter on a theory of "sudden combat." See ___ Commonwealth v. Richard, 384 N.E.2d 636, 638 (Mass. 1979) ____________ _______ (the presence of sudden combat constitutes a mitigating circumstance sufficient to reduce a verdict of murder to manslaughter under Massachusetts law). While we concede (1) that there was evidence (i.e., the testimony that petitioner ____ stabbed Cullen because he thought Cullen was "going to jump him from behind" and/or because he thought Cullen was "beating up Kevin Martin") which might conceivably have _____ provided a basis for the jury to have concluded that the government had not proved an absence of sudden combat; and (2) that the conclusive presumption tended to deter the jury from considering this evidence, see Yates, 111 S. Ct. at 1894 ___ _____ n.10 (conclusive presumptions tend to deter a jury from considering any evidence for the presumed fact beyond the ____________________ for placing the burden on petitioner, we will regard the burden of proof as resting upon the respondents. -19- 19 predicate evidence), we think it extremely unlikely that the jury would have relied on this evidence and returned a verdict of manslaughter. Mary VanGordon testified that the stabbing was administered while the victim was being held by another man. Moreover, the evidence reveals that the victim was stabbed nine times, with six of the stab wounds being ____ delivered to the chest area. In our view, such evidence, when combined with the fact that the defense never specifically argued a sudden combat theory to the jury,16 strongly undermines any claim that petitioner was, throughout the entirety of the stabbing, acting in response to sudden combat. We do not believe that the erroneous instruction had a substantial and injurious effect or influence on the jury's verdict. Accordingly, we affirm the district court's conclusion that the instructional error was harmless.17 Affirmed. Affirmed. _________ CYR, Circuit Judge (concurring): Although I share CYR, Circuit Judge (concurring): ______________ my dissenting brother's belief that the Carella concurrence _______ ____________________ 16. It is clear from the record that petitioner focused his defense efforts on arguing that the prosecution did not establish beyond a reasonable doubt that he was, in fact, the stabber. 17. In so ruling, we express no opinion as to the district court's conclusion that the error here was harmless even under the Chapman standard. _______ -20- 20 articulates compelling grounds for more narrowly confining "harmless error" review of a jury instruction mandating a conclusive presumption, I join the majority opinion because I am satisfied that the review required by the Court in Brecht ______ encompasses the entire record. Dissent follows. Dissent follows. -21- 21 Stahl, Circuit Judge, dissenting. I agree with the _____________ majority that the instruction challenged here had the effect of setting up a conclusive presumption which was not explained away by the totality of the charge. I further agree with the majority that conclusive presumptions can constitute harmless error. However, I cannot agree with the method of harmless-error analysis employed by the majority and with its conclusion that the presumption-creating instruction was harmless. Accordingly, I respectfully dissent. A. A. __ In concluding that it is "extremely unlikely that the jury would have relied on [the unconsidered sudden combat] evidence and returned a verdict of manslaughter," see ___ ante at 19, the majority significantly expands the contours ____ of harmless-error analysis. For, implicit in this facially uncontroversial statement are two radical assumptions: (1) that, in the habeas context, reviewing courts now are obliged to supply missing factual findings; and (2) that, in the habeas context, reviewing courts can and should rely upon evidence that the jury did not consider. In my opinion, neither assumption can be squared with settled authority interpreting the Sixth Amendment jury-trial right and the Due Process Clause. -21- 21 As the Supreme Court has made clear in a series of recent decisions, an instruction setting up a mandatory presumption engenders an error different in nature than the more typical form of constitutional error -- improperly admitted evidence and/or improperly allowed argument. A mandatory presumption directs the jury to presume an element of the crime charged upon finding only certain predicate facts. See, e.g., Sandstrom, 442 U.S. at 517. This, of ___ ____ _________ course, directly violates a criminal defendant's due process rights to have the prosecution prove all elements of the offense charged, see Sullivan v. Louisiana, 113 S. Ct. 2078, ___ ________ _________ 2080 (1993) (citing Patterson v. New York, 432 U.S. 197, 210 _________ ________ (1977) and Leland v. Oregon, 343 U.S. 790, 795 (1952)), and ______ ______ to have the prosecution persuade the factfinder beyond a reasonable doubt of the facts necessary to establish each of those elements, id. at 2080-81 (citing In re Winship, 397 ___ _____________ U.S. 358, 364 (1970) and Cool v. United States, 409 U.S. 100, ____ _____________ 104 (1972) (per curiam)). It also, in my view, tends to undermine the Sixth Amendment jury-trial right. See ___ generally Carella, 491 U.S. at 268-69 (Scalia, J., _________ _______ concurring); cf. Sullivan, 113 S. Ct. at 2080 (discussing ___ ________ Sixth Amendment right to have the jury, and not the judge, make the requisite finding of guilt). A conclusive mandatory presumption, as __________ distinguished from a rebuttable mandatory presumption, has a -22- 22 further pernicious effect. By directing, without the possibility of rebuttal, the jury to find the elemental fact merely upon finding certain predicate facts, it "tend[s] to deter a jury from considering any evidence for the presumed fact beyond the predicate evidence." Yates, 111 S. Ct. at _____ 1894 n.10. Indeed, given the "sound presumption of appellate practice[] that jurors are reasonable and generally follow the instructions they are given," id. at 1893, a reviewing ___ court must assume that the jury did not consider evidence ____ beyond that relating to the predicate facts, because "to do so would be a waste of the jury's time and contrary to its instructions," id. at 1894 n.10; see also Carella, 491 U.S. ___ ___ ____ _______ at 269 (Scalia, J., concurring). All of this is not to say that a conclusive presumption can never be harmless error. What is does mean, however, as Justice Scalia convincingly demonstrates in his concurrence in Carella, is that "the harmless-error analysis _______ applicable in assessing a mandatory conclusive presumption is wholly unlike the typical form of such analysis." Id. at ___ 267. Whereas it makes sense in the case of the more typical form of constitutional error -- improperly admitted evidence and/or improperly allowed argument -- to perform the type of whole-record "quantitative assessment" outlined in Brecht ______ (and, incidentally, also outlined in Chapman) in order "to _______ determine whether the fact supported by [the] improperly -23- 23 admitted evidence [or improperly allowed argument] was in any event overwhelmingly established by other evidence," see id., ___ ___ such an inquiry makes no sense where the error is not that the jury may have been swayed by tainted information, but rather is that the jury failed to consider relevant evidence and failed to make a required finding, id. at 267-69. For, ___ as Justice Scalia explains: [Such] problem[s] would not be cured by an appellate court's determination that the record evidence unmistakably established guilt, for that would represent a finding of fact by judges, not by a jury. As with a directed verdict [for the State, which is constitutionally impermissible, see ___ United States v. Martin Linen Supply Co., _____________ _______________________ 430 U.S. 564, 572-73 (1977)], "the error in such a case is that the wrong entity judged the defendant guilty." Id. at 269 (quoting Rose v. Clark, 478 U.S 570, 578 (1986)). ___ ____ _____ Thus, the proper question for the reviewing court "`is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials.'" Id. (quoting ___ Bollenbach v. United States, 326 U.S. 607, 614 (1946)). __________ _____________ With these principles in mind, Justice Scalia has proposed a test for determining whether, despite the presence of a conclusive presumption, a particular case presents a "`rare situation[]'" where "`[a] reviewing court can be confident that [such a presumption] did not play any role in the jury's verdict.'" Id. at 270 (quoting Connecticut v. ___ ___________ -24- 24 Johnson, 460 U.S. 73, 87 (1983) (plurality opinion)). _______ Seeking to avoid the specter of factfinding by reviewing courts on the basis of evidence the jury never considered, the Carella test does not direct courts to ascertain whether _______ the presumed fact was otherwise established to varying degrees by the evidence (as the Brecht and Chapman tests ______ _______ would do). Rather, the test instructs reviewing courts to ask (1) whether the instruction established a conclusive presumption on a charge which did not affect other charges and on which the defendant was acquitted; (2) whether the instruction established a conclusive presumption with respect to an element of the crime which the defendant admitted; or (3) whether the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact, making those findings [the] functional[] equivalent to . . . the element required to be presumed. Id. at 271. If the answer to any of these three questions is ___ "yes," the error is harmless. See id. Because this test ___ ___ faithfully preserves a criminal defendant's Sixth and Fourteenth Amendment rights to have an impartial jury make ____ the requisite factual and elemental determinations in his/her trial, and because it provides assurance that reviewing courts will consider only the evidence that the jury -25- 25 considered, I would apply this test rather than the ill- defined harmless-error test that the majority employs today. B. B. __ Before applying the Carella test to this case, I _______ feel it appropriate to respond to the arguments against the Carella test and in favor of the whole-record approach _______ outlined in Brecht. Obviously, the most potent of these ______ arguments is the one relied upon by the majority: that the whole-record Brecht analysis applies to "trial errors," that ______ the Supreme Court, in a string citation in Fulminante, __________ indicated that a conclusive presumption is "trial error," and that we therefore are obliged to conduct our harmlessness review in light of the whole record. I will admit that the Court's characterization of a conclusive presumption as "trial error" in Fulminante is __________ troublesome; indeed, I think this case well illustrates Justice White's criticism of the "trial error"/"structural error" dichotomy. See Fulminante, 499 U.S. at 291 (White, ___ __________ J., dissenting in part) (arguing that, in assessing whether harmless-error analysis ought to be applied, courts should disregard the trial error/structural error distinction and instead "consider[] the nature of the right at issue and the effect of [the] error upon the trial"). Despite the aforementioned indication to the contrary, the presence of a non-harmless (as determined by the Carella test) conclusive _______ -26- 26 presumption strikes me as a type of "structural error." See ___ Carella, 491 U.S. at 268 (Scalia, J., concurring) ("The _______ constitutional right to a jury trial embodies a profound judgment about the way in which law should be enforced and justice administered. It is a structural guarantee that __________ _________ reflects a fundamental decision about the exercise of official power -- a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges.") (emphasis supplied) (citations and internal quotation marks omitted); cf. Sullivan, 113 S. Ct. ___ ________ at 2083 (denial of the right to a jury verdict of guilt beyond a reasonable doubt is a structural error). In my view, however, whether we label a conclusive presumption trial error, structural error, or something in between is of no consequence; what matters instead is that we apply the appropriate form of harmless-error review in assessing the effects of that presumption. Applying a whole- record review not only ignores the considerations outlined in Part A. of this dissent, but it also ignores two indications by Supreme Court majorities, subsequent to Fulminante, that __________ __________ the Carella analysis is properly employed by courts reviewing _______ presumptions. See Sullivan, 113 S. Ct. at 2082 (indicating, ___ ________ in the direct review context, that Carella provides the _______ proper framework for determining whether or not a mandatory presumption was harmless); Yates, 111 S. Ct. at 1894 n.10 _____ -27- 27 (implicitly endorsing, in the habeas context, the Carella _______ test as a means for evaluating whether or not a conclusive presumption was harmless). One might argue that Yates has _____ been superseded by Brecht, and that Brecht did not control in ______ ______ Sullivan because Sullivan was a direct review case. In ________ ________ response, I would point out that Chapman, which did control _______ in Yates and would have controlled in Sullivan had the error _____ ________ therein been deemed amenable to harmless-error review, contemplates a whole-record review every bit as much as Brecht does; nonetheless, the Court has made clear in the ______ Chapman context that, when confronted with presumption error, _______ the typical form of whole-record analysis does not apply. Thus, I read the string citation in Fulminante as merely __________ indicating that a conclusive presumption is amenable to harmless-error review. I do not read it as stating that such ___ a presumption is subject to the usual whole-record harmless- error test applicable to most other forms of trial error. It might also be argued that the Carella test _______ derives from Chapman, see Carella, 491 U.S. at 271 (Scalia, _______ ___ _______ J., concurring) (noting that if the Carella test is met, _______ "[t]he error is harmless because it is `beyond a reasonable doubt' that the jury found the facts necessary to support the conviction") (citing Chapman, 386 U.S. at 24), and that the _______ replacement of Chapman with Brecht on habeas means that the _______ ______ Carella concurrence has no relevance in habeas cases. In _______ -28- 28 response, I would concede that the Carella test can be _______ ___ __ theoretically viewed as "deriving from" Chapman. In my view, _______ however, the Carella concurrence can just as easily and _______ fairly be read as (1) explaining that a conclusive presumption sets up an error which tends to undermine a structural guarantee of the Constitution and which only can be harmless in those "rare" circumstances where the presumption did not play "any role" in the jury's verdict; (2) setting forth the test for determining whether the error played any such role; and (3) noting, in conclusion and without prior reference to Chapman, that when the Carella _______ _______ test is met, the Chapman test also is met. In light of this, _______ and because abandoning Carella necessarily means that we must _______ welcome factfinding by habeas courts on the basis of evidence the jury did not consider, I prefer the latter reading. A third argument might be that, in Yates, the _____ Supreme Court has already ratified factfinding by habeas courts. My response to such an argument simply would be that I agree. As I see it, the Yates test for reviewing the _____ effects of rebuttable mandatory presumptions, which impermissibly shift the burden of proof from the prosecution to the defendant, does, despite the Supreme Court's indications to the contrary, reek of factfinding by reviewing courts. Cf. generally Yates, 111 S. Ct. at 1898 (Scalia, J., ___ _________ _____ concurring in judgment) (explaining that, when a jury has -29- 29 been directed to apply a rebuttable mandatory presumption, it has never found that the prosecution proved the element on which the presumption was erected beyond a reasonable doubt). However, as Justice Scalia notes in his Carella concurrence: _______ It is one thing to say that the effect of th[e] erroneous burden-shifting [effectuated by a rebuttable presumption] will be disregarded if the record developed at trial establishes guilt beyond a reasonable doubt; it is quite another to say that the jury's failure to make any factual determination of the ___ elemental fact -- because of a conclusive presumption resting upon findings that do not establish beyond a reasonable doubt the elemental fact -- will be similarly disregarded. Carella, 491 U.S. at 273 (Scalia, J., concurring) (internal _______ quotation marks omitted) (arguing the particular propriety of the Carella test to the conclusive presumption context). _______ Thus, I do not think that the Yates test can and should be _____ read as implicitly endorsing the type of factfinding the majority engages in today. Finally, one might argue, as does the Brecht ______ majority, that wholesale use of the Brecht test promotes the ______ principles of restraint, often couched in terms of "comity" and "federalism," underlying the Supreme Court's more recent habeas jurisprudence. In response, I could only agree if "restraint" is defined solely in terms of state prisoners not being granted very many writs of habeas corpus. For, I think it obvious that factfinding on the basis of record evidence -30- 30 that the jury never considered cannot be cited as evidence of judicial restraint. So too do I think it obvious that principles of comity and federalism should never require the _____ continued incarceration of a state prisoner who was not afforded his/her constitutional rights to have an impartial jury make the requisite factual and elemental determinations in his/her trial just because a federal judge or a panel of federal judges believe that guilt is "likely" spelt out by the record. Cf. Bollenbach, 326 U.S. at 614. ___ __________ C. C. __ Application of the Carella test to the case at bar _______ easily yields the conclusion that the error here was not harmless.18 I start from the premise that the question of whether an unlawful killing constitutes murder or manslaughter turns on whether or not the killing was committed with malice. See ante note 4. "An intention to ___ ____ inflict injury on the victim which is not justified on any lawful ground or palliated by the existence of any mitigating __ _________ __ ___ _________ __ ___ __________ circumstances is malicious within the meaning of the law." _____________ Commonwealth v. Colon-Cruz, 562 N.E.2d 797, 808 (Mass. 1990) ____________ __________ ____________________ 18. Obviously, petitioner neither was acquitted of the charge on which the presumption was set up nor admitted at trial that if he did the stabbing, he did so maliciously. Thus, I restrict my inquiry under Carella to whether the _______ predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to malice that no rational jury could have found those facts without also finding malice. -31- 31 (emphasis supplied) (quoting Commonwealth v. McGuirk, 380 ____________ _______ N.E.2d 662, 666-67 (Mass. 1978), cert. denied, 439 U.S. 1120 _____ ______ (1979)); see also Reddick v. Commonwealth, 409 N.E.2d 764, ___ ____ _______ ____________ 769 (Mass. 1980) (malice and the presence of legal mitigation are "mutually exclusive"). The presence of "sudden combat" constitutes a mitigating circumstance sufficient to negate malice and to reduce a verdict of murder to manslaughter under Massachusetts law. See Richard, 384 N.E.2d at 638; cf. ___ _______ ___ Commonwealth v. Nardone, 546 N.E.2d 359, 364 (Mass. 1989) ____________ _______ (distinguishing between assault with intent to murder and assault with intent to kill). And, when such a mitigating circumstance is adequately raised in the evidence (as sudden combat was here), the Commonwealth must prove the absence of this circumstance beyond a reasonable doubt. See ___ Commonwealth v. Nieves, 476 N.E.2d 179, 182 (Mass. 1985) ____________ ______ (citing Mullaney v. Wilbur, 421 U.S. 684, 697-98 (1975) and ________ ______ Commonwealth v. Stokes, 374 N.E.2d 87, 94 (Mass. 1978)). ____________ ______ As the majority opinion states, it is at least reasonably likely that the jurors, on the basis of the challenged instruction, found malice solely upon finding that petitioner stabbed the victim deliberately and cruelly. The foregoing authority, however, makes clear that deliberate and cruel behavior is not necessarily tantamount to malicious behavior. To be specific, the stabbing here could have been both deliberate and cruel, but administered in response to -32- 32 sudden combat, of which there is evidence in this record. Thus, I cannot say that, in this instance, "the predicate facts relied upon in the instruction, or other facts necessarily found by the jury, are so closely related to the ultimate fact to be presumed that no rational jury could find those facts without also finding that ultimate fact." Carella, 491 U.S. at 271. Accordingly, the error had a _______ "substantial and injurious effect or influence in determining the jury's verdict." The petition, therefore, should be granted.19 ____________________ 19. Even were I to employ the deferential standard of review the majority utilizes, I could not join the majority opinion. As I have explained, the error committed here had the effect of deterring the jury from considering evidence of sudden combat. Yet, there was an abundance of such evidence; indeed, it is undisputed that the stabbing took place in the midst of a drunken melee. In light of this, and in light of the further fact that the Commonwealth bore the burden of proving an absence of sudden combat beyond a reasonable doubt, see Nieves, 476 N.E.2d at 182, I am at a loss to see ___ ______ how the error can be viewed as harmless even under Brecht. ______ -33- 33